# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14-cv-2188 (KBJ) |
| ARK UNION STATION, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

This is a case about whose interests the Washington Metropolitan Area Transit Authority ("WMATA") serves when it spends money to repair damaged transit infrastructure in the Metrorail system—a proverbial third rail of this region's politics. It is also, quite literally, a case about Metro's third rail. On September 25, 2011, a sewer pipe burst under the (since-closed) America Restaurant in Union Station, and the water and other debris that leaked into the ground below impacted an underground electrical traction power substation ("TPSS") WMATA owns and uses to operate a portion of the Metro system's Red Line. (*See* Compl., ECF No. 1, ¶¶ 13–14; *see also* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Opp'n to Union Station Mot."), ECF No. 10, at 5 (explaining that the TPSS "is used to power the 'third rail,' which supplies electricity to rail cars in order to move the trains").)[1] WMATA alleges that this particular leak "caused fire and water damage to the TPSS and related equipment"

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

(Compl. ¶ 13), which, in turn, "caused WMATA to incur extensive repairs, replacement of equipment, and other lost revenue" (*id.* ¶ 15).

To recover these expenses, WMATA filed the instant lawsuit against Ark Union Station Incorporated and Ark Restaurants Corporation, which jointly operated the America Restaurant (collectively, "the Restaurant Defendants"). (*See id.* ¶¶ 3–4, 9.) WMATA also named as defendants both Union Station Redevelopment Corporation, which "was responsible for maintenance and construction projects" at Union Station (*id.* ¶ 11), and Jones Lang LaSalle Americas, Inc., which "was the property management company for Union Station" (collectively, "the Union Station Defendants") (*id.* ¶ 12).[2] WMATA's one-count complaint asserts a claim of common law negligence on the grounds that "Defendants, jointly and severally, breached their duty to WMATA by not maintaining or preventing the pipe in question from breaking and leaking water, and otherwise failing to take immediate action once the pipe failed." (*Id.* ¶ 21.) WMATA asks the Court to "enter judgment against the Defendants, jointly and severally, in the amount of $6,000,000, plus pre- and post-judgment interest and costs[.]" (*Id.* ¶ 22.)

Significantly for present purposes, WMATA filed its complaint on December 23, 2014, which is slightly more than three years after the water damage occurred. The time lag between the pipe-burst incident and WMATA's filing of the instant complaint has turned into a major source of conflict among the parties: in separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)—which are before this Court at present—the Union Station Defendants and the Restaurant Defendants argue that this

---

[2] The complaint names Union Station Venture, Ltd. as a Defendant as well (*see* Compl. ¶ 2), but WMATA has stipulated to the dismissal of this party (*see* Stipulation of Dismissal, ECF No. 17).

lawsuit must be dismissed as untimely because WMATA's claim is barred by the District of Columbia's three-year statute of limitations for actions "for which a limitation is not otherwise specially prescribed[.]" D.C. Code § 12-301(8). (*See* Mem. in Supp. of Mot. to Dismiss by Defs. Jones Lang LaSalle Ams., Inc. & Union Station Redevelopment Corp. ("Union Station Mot."), ECF No. 7-1, at 8; Mem. in Supp. of Ark Restaurants Corp. & Ark Union Station Inc.'s Mot. to Dismiss ("Restaurant Mot."), ECF No. 22, at 3–9.) *See also Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986) (explaining that this residual limitations provision applies to "an action for negligence"). Both sets of Defendants fully acknowledge that WMATA is an agency of the District of Columbia government and that the District's statute of limitations "does not apply . . . to actions brought by the District of Columbia government." D.C. Code § 12-301. However, Defendants argue that WMATA's claim is nevertheless time-barred because the D.C.-government exemption only applies to WMATA lawsuits that seek to vindicate "public rights," and in Defendants' view, this is not such a lawsuit. (*See* Union Station Mot. at 8–17; Restaurant Mot. at 3–9.)

In response, WMATA offers several reasons why the instant action is not time-barred. (*See generally* Opp'n to Union Station Mot.; Pl.'s Opp'n to Defs. Ark Restaurant Corp. & Ark Union Station Inc.'s Mot. to Dismiss ("Opp'n to Restaurant Mot."), ECF No. 23.) First, WMATA argues that it is exempted from the statute of limitations regardless of whether this lawsuit seeks to vindicate a public right, because WMATA derives from Maryland and Virginia a categorical immunity from statutes of limitation. (*See* Opp'n to Union Station Mot. at 6–9; Opp'n to Restaurant Mot. at 1–2.) Second, WMATA maintains that even if it possesses only the limited municipal

immunity from statutes of limitation that is reflected in D.C. Code § 12-301, it is exempted from the statute of limitations under that provision because this lawsuit does, in fact, seek to vindicate a public right. (*See* Opp'n to Union Station Mot. at 9–17; Opp'n to Restaurant Mot. at 2–4.) Finally, WMATA argues that, assuming *arguendo* that the instant lawsuit is subject to the statute of limitations, it is nevertheless timely, because the applicable provision of that statute is the one that prescribes a *five-year* limitations period "for the recovery of damages for an injury to real property from toxic substances including products containing asbestos[,]" D.C. Code § 12-301(10), and not the provision that contains a three-year period for actions "for which a limitation is not otherwise specially prescribed[,]" *id.* § 12-301(8). (*See* Opp'n to Union Station Mot. at 17.)

Both motions to dismiss are now ripe for this Court's review. (*See* Union Station Mot.; Opp'n to Union Station Mot.; Mem. in Reply to Pl.'s Opp'n to Defs. Jones Lang LaSalle Ams., Inc.'s & Union Station Redevelopment Corp.'s Mot. to Dismiss ("Union Station Reply"), ECF No. 11; Restaurant Mot.; Opp'n to Restaurant Mot.) In addition, the Court ordered supplemental briefing from WMATA and the Union Station Defendants regarding the relevance of case law concerning WMATA's sovereign immunity from tort suits, and the extent to which WMATA's claim seeks to vindicate a public right. (*See* Min. Order of Feb. 17, 2016; *see also* Suppl. Br. in Supp. of Mot. to Dismiss ("Union Station Suppl. Br."), ECF No. 18; Pl.'s Suppl. Br. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Suppl. Br."), ECF No. 19; Reply Mem. of Defs. Jones Lang LaSalle Ams., Inc. & Union Station Redevelopment Corp. ("Union Station Suppl. Reply"), ECF No. 20; Pl.'s Reply to the Defs.' Suppl. Br. in Opp'n to Defs.' Mot to

Dismiss ("Pl.'s Suppl. Reply"), ECF No. 21.) Having considered the parties' arguments, and for the reasons explained fully below, this Court agrees with WMATA that this lawsuit seeks to vindicate a public right because it advances WMATA's charter purpose of operating public transit facilities, and therefore, WMATA's claim is not subject to the statute of limitations prescribed by the D.C. Code. Accordingly, the motions to dismiss that the Union Station Defendants and the Restaurant Defendants have filed will be **DENIED**. A separate Order consistent with this Memorandum Opinion will follow.

## I.  BACKGROUND

WMATA is a "common agency" of the District of Columbia, Maryland, and Virginia, D.C. Code § 9-1107.01(2), and the parties debate the degree to which that status renders WMATA immune from the running of the District's statute of limitations in this lawsuit—a negligence action arising under District of Columbia law. Thus, WMATA's history and structure are relevant background, and so too is the law of government immunity from statutes of limitation, both in general and as it exists in the District of Columbia.

### A.  The History And Structure Of WMATA

On November 6, 1966, Maryland, Virginia, and the District of Columbia entered into a compact that "created WMATA" in order "to operate a mass transit system for the District of Columbia and the surrounding suburban areas of Maryland and Virginia." *Morris v. WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986). Congress consented to the WMATA Compact as the Constitution requires, *see* U.S. Const. art. I, § 10, cl. 3, and it also enacted the Compact as part of the District of Columbia's local law, *see* Wash.

Metro. Area Transit Auth. Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code § 9-1107.01). In a section entitled "Purpose and Functions," the Compact instructs WMATA "to plan, develop, finance and cause to be operated improved transit facilities . . . as part of a balanced regional system of transportation[.]" *Id.* § 9-1107.01(2).

Pursuant to the Compact, WMATA is "a body corporate *and* politic" that exists as a "common agency" of the District, Maryland, and Virginia. *Id.* § 9-1107.01(2), (4) (emphasis added). It was "foreseen" that WMATA's "fare revenues [would] never come close to covering [its] costs[.]" *Morris*, 781 F.2d at 225; *see also* D.C. Code § 9-1107.01(16) (providing that operating budget deficits "shall be equitably shared among the federal, District of Columbia and participating local governments"). Thus, the Compact contains "[c]ommitments for [f]inancial [p]articipation" from each of the signatory jurisdictions, D.C. Code § 9-1107.01(18), and it also authorizes WMATA to borrow money, issue bonds, and raise revenue through other means, *see id.* § 9-1107.01(27).

Notably, the Compact does not address the degree to which WMATA is subject to the statutes of limitation of its signatory jurisdictions when it is engaged in litigation. But the Compact does address WMATA's sovereign immunity from liability, providing that WMATA is "liable for its contracts and for its torts . . . committed in the conduct of any proprietary function, . . . but shall not be liable for any torts occurring in the performance of a governmental function." *Id.* § 9-1107.01(80); *see also Morris*, 781 F.3d at 220–21 (explaining that "each of the three signatories . . . confer[red] its sovereign immunity upon WMATA" and that section 80 of the Compact is a "partial

waiver of immunity").  The Compact also provides that "[t]he United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against [WMATA.]" D.C. Code § 9-1107.01(81).  (*See also* Compl. ¶ 7 (citing section 81 of the WMATA Compact as the basis for this Court's jurisdiction).)

**B.**  *Quod Nullum Tempus Occurrit Regi* **– No Time Runs Against The King**

Under the common law *nullum tempus* doctrine, which dates back to the thirteenth century, "the sovereign is exempt from . . . the operation of statutes of limitations[.]"  *Guaranty Trust Co. of N.Y. v. United States*, 304 U.S. 126, 132 (1938); *see also BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 96 (2006) (citing "the traditional rule *quod nullum tempus occurrit regi*—time does not run against the King").  Unlike the more familiar doctrine of sovereign immunity, which protects a sovereign from being subjected to suit without its consent, *see Alden v. Maine*, 527 U.S. 706, 715–16 (1999), the *nullum tempus* doctrine aids a sovereign that affirmatively invokes a judicial forum and pursues a cause of action that would otherwise be time-barred.  *See Guaranty Trust Co.*, 304 U.S. at 134–36.[3]  In the American common law system, "'the implied immunity of the domestic sovereign, state or national, has been universally deemed to be an exception to local statutes of limitation where the government, state or national, is not expressly included.'"  *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 294 (1983) (O'Connor, J., dissenting) (quoting *Guaranty Trust Co.*, 304 U.S. at 133).

---

[3] The conceptual relationship between the *nullum tempus* doctrine and defensive sovereign immunity is disputed.  *See Shootman v. Dep't of Transp.*, 926 P.2d 1200, 1205 n.7 (Col. 1996) (en banc) (collecting cases and observing that "[t]here is no general agreement as to whether the doctrine of *nullum tempus* is an aspect of sovereign immunity or whether the two doctrines are distinct and separate").

Although the *nullum tempus* doctrine originated as a "prerogative of the Crown[,]" the doctrine's "survival in the United States has been generally accounted for and justified on grounds of policy rather than upon any inherited notions of the personal privilege of the king." *Guaranty Trust Co.*, 304 U.S. at 132. Specifically, "the source of its continuing vitality . . . is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Id.* (internal quotation marks and citation omitted). That is, courts have determined that "the rule is supportable now because its benefit and advantage extend to every citizen, including the defendant, whose plea of laches or limitations it precludes[.]" *Id.*

Consistent with this policy rationale, the Supreme Court has limited the *nullum tempus* doctrine as it exists in federal common law to those lawsuits that the government brings "as a sovereign government to enforce a public right, or to assert a public interest[.]" *United States v. Beebe*, 127 U.S. 338, 344 (1888). Thus, the doctrine does not apply when the government seeks to vindicate a "private right," such as when it sues to enforce a privately held patent, but the patent-holder is the real party in interest and "the government is a mere formal complainant" in the lawsuit. *Id.* at 346–47. Conversely, the doctrine *does* apply when the government seeks to recover damages that it incurred "in its sovereign capacity," even when those damages are the same type that a private company might incur. *E. I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924) (exempting from the statute of limitations a lawsuit in which the United States, after "taking over and operating the railroad systems of the country . . . as a war measure, under a right in the nature of eminent domain," sought to

recover damages arising from train-loading delays (internal quotation marks and citation omitted)).

### C. *Nullum Tempus* Principles And The District Of Columbia

The Supreme Court has explained that the common law doctrine of *nullum tempus* is reserved for sovereign entities (i.e., the federal government and the states), and does not extend "to agencies or grantees of the local sovereign such as municipalities, county boards, school districts, and the like." *Guaranty Trust Co.*, 304 U.S. at 135 n.3. Accordingly, the traditional rule is that a "statute of limitations runs against a county or other municipal corporation"—and in particular against the District of Columbia—just as it would against a private litigant. *Metro. R.R. Co. v. District of Columbia*, 132 U.S. 1, 12 (1889) (internal quotation marks and citation omitted); *see also id.* ("The prerogative is that of the sovereign alone; . . . [h]er grantees, though artificial bodies created by her, are in the same category with natural persons." (internal quotation marks and citation omitted)). However, in holding that the *nullum tempus* doctrine does not extend to municipalities, the Supreme Court also recognized that "offenses against the sovereign power itself" can sometimes occur through intrusion on a "right of property" that the sovereign has "vested in [a] municipality," and the Court "express[ed] no opinion" regarding whether or not a municipality's lawsuit that seeks redress for such an offense would be subject to a statute of limitations. *Id.* In other words, the Supreme Court left open the possibility that, when a lawsuit is brought by a municipality like the District of Columbia to vindicate the interests of the sovereign (e.g., the sovereign's property rights), the lawsuit could be exempt from the statute of limitations under the *nullum tempus* doctrine.

Notably, a much-cited 1989 opinion of the D.C. Court of Appeals shifted the focus as it relates to lawsuits brought by the District. *See District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 403 (D.C. 1989). That is, the D.C. Court of Appeals opined that the key question regarding the applicability of the common law *nullum tempus* doctrine in the District of Columbia's lawsuits is not whether the lawsuit implicates an interest of *the sovereign*, as opposed to the municipality; rather, under the D.C. Court of Appeals' jurisprudence, the *nullum tempus* doctrine applies to the District's lawsuits so long as the lawsuit seeks to vindicate an interest of *the public*. *See id.* (stating that "[t]he issue is . . . not whether the relevant power belongs to the District or to Congress"); *see also id.* at 405, 410 (employing "a functional rather than a formalistic reading of the immunity issue" that focuses on "the extent to which the public at large is interested in the outcome" of the lawsuit); *District of Columbia v. Weiss*, 263 A.2d 638, 639 (D.C. 1970) (explaining that, "having expended public monies for a public purpose, the District is here asserting a public right").[4]

---

[4] In the course of rejecting the Supreme Court's suggestion that, if the *nullum tempus* doctrine was ever to apply to the District of Columbia it would be only in suits to redress offenses against the federal government, the D.C. Court of Appeals in *Owens-Corning* highlighted the advent of home rule as a significant intervening event that post-dated the Supreme Court's decision in *Metropolitan Railroad*. *See* 572 A.2d at 404–06 (citing District of Columbia Self-Government and Governmental Reorganization (Home Rule) Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) (codified as amended at D.C. Code §§ 1-201 to 1-207.71). The Supreme Court had rested its conclusion about municipalities partly on "a brief survey of the government of the District" existing at the time, *Metro. R.R.*, 132 U.S. at 3, and a finding that the District had no inherent sovereignty of its own, *see id.* at 9. Later, after Congress had passed the Home Rule Act, the D.C. Court of Appeals initially hypothesized that "it is not likely" that this development affected the Supreme Court's conclusion in *Metropolitan Railroad* that the District is not sovereign and is therefore not exempt from statutes of limitation. *Ward v. District of Columbia*, 494 A.2d 666, 668 (D.C. 1985). But in *Owens-Corning*, the D.C. Court of Appeals dismissed that earlier evaluation as "dicta," 572 A.2d at 404 n.26, and reasoned that Congress could not have delegated to the District the "broad governmental powers" encompassed by the Home Rule Act "without also granting the District immunity under the doctrine of *nullum tempus*," *id.* at 405–06; *see also WASA*, 851 A.2d at 415 n.8 ("In *Owens-Corning*, we held that because of the [Home Rule Act], *Metropolitan Railroad Co.* was no longer applicable to the District of Columbia[.]").

In 1986, through an amendment to the District statute that prescribes limitation periods for various causes of action, the D.C. Council enacted a legislative response to the perception that the common law doctrine of *nullum tempus* did not apply to suits filed by the District. *See* District of Columbia Statute of Limitations Amendment Act of 1986, D.C. Law 6-202 (1987); *see also D.C. Water & Sewer Auth. v. Delon Hampton & Assocs.* (*WASA*), 851 A.2d 410, 414 (D.C. 2004) (noting that the purpose of the amendment was "to ensure that the District received, at the least, the benefit of the common law principle of '*nullum tempus*'"). The post-amendment text is unequivocal: it states that the various limitation periods prescribed in the statute "do[] not apply . . . to actions brought by the District of Columbia government." D.C. Code § 12-301. However, drawing on the intent of the 1986 amendment to encapsulate the *nullum tempus* doctrine as it exists in the common law, the D.C. Court of Appeals has explained that the statutory exemption for lawsuits brought by the District of Columbia only applies to suits that seek to "enforce[] public rights." *WASA*, 851 A.2d at 414. The question at issue in the instant case is whether, and to what extent, WMATA can rely on the codified exemption from the otherwise applicable limitations period for "actions brought by the District of Columbia government" in seeking to prosecute the lawsuit for property damage that WMATA has filed here.

## II.   LEGAL STANDARDS

### A.   Motions To Dismiss Pursuant To Statutes Of Limitation

Both the Union Station Defendants and the Restaurant Defendants have moved to dismiss WMATA's complaint as time-barred under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal for "failure to state a claim upon which relief

can be granted[.]" Fed. R. Civ. P. 12(b)(6).  It is clear beyond cavil that "[i]f the allegations [in a complaint] show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"  *Jones v. Block*, 549 U.S. 199, 215 (2007).  However, a defendant may raise a statute of limitations as an affirmative defense via a Rule 12(b)(6) motion only when the facts that give rise to the defense are clear from the face of the complaint.  *See Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 85 (D.D.C 2014).  "If no reasonable person could disagree on the date on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds."  *DePippo v. Chertoff*, 453 F. Supp. 2d 30, 33 (D.D.C. 2006) (internal quotation marks and citation omitted).

In ruling on a Rule 12(b)(6) motion grounded in a statute of limitations defense, a court must accept the well-pleaded allegations in the complaint as true and determine whether the plaintiff has plausibly alleged a claim that is not time-barred.  *See Hill v. Gray*, 28 F. Supp. 3d 47, 54 (D.D.C. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  When a cause of action in a complaint arises under District of Columbia law, a federal court must apply the relevant District of Columbia statute of limitations and is bound by the D.C. Court of Appeals' authoritative construction of that statute.  *See Hartford Acc. & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1118 (D.C. Cir. 1997) (citing *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945)).[5]

---

[5] The parties all either state or implicitly assume that WMATA's negligence claim arises under District of Columbia law.  (*See* Union Station Reply at 6 (invoking "District of Columbia law"); Opp'n to Union Station Mot. at 17 (arguing that the applicable statute of limitations is D.C. Code § 12-301(10); Restaurant Mot. at 3 (arguing that the applicable statute of limitations is D.C. Code § 12-301(8)).)  This Court agrees with that assessment.  *See Felder v. WMATA*, 174 F. Supp. 3d 524, 528–32 (D.D.C. 2016).

**B.** **The "Public Rights" Test Under D.C. Code § 12-301**

Section 12-301 of the D.C. Code establishes specific expiration periods for a variety of causes of action under District of Columbia law. *See, e.g.*, D.C. Code § 12-301(4) (prescribing a one-year period "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment"); *id*. § 12-301(10) (setting a five-year period "for the recovery of damages for an injury to real property from toxic substances including products containing asbestos"). Notably, the statute also contains a catch-all provision that sets a three-year limitations period for any legal action "for which a limitation is not otherwise specially prescribed[.]" *Id.* § 12-301(8). As explained above, section 12-301 was amended in 1986 so as to be inapplicable "to actions brought by the District of Columbia government." D.C. Code § 12-301.

According to the D.C. Court of Appeals, the D.C. Council intended for this statutory exemption to shield the District government from statutes of limitation to the same degree that sovereigns are exempted under the common law (*see* Part I.C, *supra*), and, in the D.C. Court of Appeals' view, that occurs "*when [the District] sues to enforce public rights.*" *WASA*, 851 A.2d at 414 (emphasis added by *WASA*) (internal quotation marks and citation omitted); *see also In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*, 895 F. Supp. 2d 48, 60–61 (D.D.C. 2012) (invoking *WASA*'s review of the legislative history to reject an argument that the exemption covers *all* lawsuits brought by the District); *D.C. Housing Auth. v. D.C. Office of Human Rights*, 881 A.2d 600, 609 (D.C. 2005) ("The proviso in question was added in 1986 to ensure that the statute of limitations does not prevent the district government from bringing suit to enforce public rights."). Consequently, in

demarcating the scope of the statutory exemption for lawsuits brought by the District government, the D.C. Court of Appeals has drawn upon its prior case law applying the *nullum tempus* doctrine as it existed at common law. *See Solid Rock Church, Disciples of Christ v. Friendship Pub. Charter Sch., Inc.*, 925 A.2d 554, 560–61 & n.2 (D.C. 2007) (discussing *Owens-Corning* while interpreting § 12-301); *WASA*, 851 A.2d at 415 (same).[6] This has led that court to employ a functional approach to determining when a limitations period runs against the District, pursuant to which the District's legal claims are said to be exempt from the statute of limitations if they arise "while in the performance of public functions." *Solid Rock Church*, 925 A.2d at 559–60.

In this regard, the D.C. Court of Appeals has articulated what has come to be known as the "public rights" test for the application of section 12-301's exemption, which is summarized as follows: "Where the District acquires a right of action directly related to its duty to perform a service to the public, or to vindicate an overwhelmingly public interest or right," it is exempt from the running of the statute of limitations in "a suit to recover money damages to enable the District to perform that service[.]" *Owens-Corning*, 572 A.2d at 407. However, because "'*any* financial loss to the government is ultimately a loss to the public fisc[,]'" *WASA*, 851 A.2d at 415 (quoting *Owens-Corning*, 572 A.2d at 407 (emphasis added)), "something more is required than a naked financial interest[,]" *Owens-Corning*, 572 A.2d at 407. When evaluating whether a particular function of the District government has the requisite public-service purpose,

---

[6] To the extent that the D.C. Court of Appeals' *Owens-Corning* decision has guided that court's subsequent interpretations of D.C. Code § 12-301, it is binding on this Court, without regard to whether the D.C. Court of Appeals' application of common law *nullum tempus* doctrine was faithful to the Supreme Court's reasoning in *Metropolitan Railroad*. *See Hartford Acc. & Indem. Co.*, 127 F.3d at 1118. (*See* Part I.C, *supra*.)

a court should consider "the scope and severity of the problem" that a lawsuit seeks to fix. *Id.* at 410. However, in this regard, what matters is not the specific subject matter of the lawsuit, but rather the broader function or activity of the government of which the lawsuit is a part. *See, e.g.*, *Solid Rock Church*, 925 A.2d at 562 n.3 (holding that, even if the portion of the property at issue had been used for a private purpose, "we view the property as a whole in concluding that it was impressed with a public use").

Notably, when identifying those District lawsuits that vindicate public rights and thus are exempt from the running of the statute of limitations, the D.C. Court of Appeals has expressly declined to borrow the categorization of government functions that some courts use when determining whether a municipal corporation gets *defensive* sovereign immunity from liability. *See Owens-Corning*, 572 A.2d at 409. In the defensive sovereign immunity context, state law sometimes distinguishes between "governmental" state functions, which give rise to municipal immunity, and "proprietary" state functions, which do not. *See, e.g.*, *Mayor & City Council of Baltimore v. Whalen*, 909 A.2d 683, 688–89 (Md. 2006); *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (Va. 2004); *cf.* D.C. Code § 9-1107.01(80) (providing that WMATA is liable for torts "committed in the conduct of any proprietary function," but not for "torts occurring in the performance of a governmental function"). But for the purpose of section 12-301, the D.C. Court of Appeals has explained that a District government lawsuit can pass the "public rights" test even when the government function that the lawsuit implicates would be proprietary if performed by a private entity. *See Owens-Corning*, 572 A.2d at 408; *see also E. I. Du Pont*, 264 U.S. at 462 (holding that train-loading-delay claims that arose while the government was operating

a railroad pursuant to a wartime seizure were exempt from the statute of limitations).

Instead, what matters in the section 12-301 context is whether "the public at large" has

an "interest" in the lawsuit or in the expenditure that the lawsuit seeks to recoup.

*Owens-Corning*, 572 A.2d at 407; *see also id.* (holding that the statute of limitations

does not apply "[w]here the District acquires a right of action directly related to its duty

to perform a service to the public").[7]

      Moreover, and significantly for present purposes, a court's focus must remain on

the public's interest in the lawsuit even when the particular entity that is suing is not

the District itself but a quasi-governmental subsidiary that the District has imbued with

a public purpose. *See, e.g.*, *Solid Rock Church*, 925 A.2d at 562 (opining that the

statute of limitations did not run against a public charter school with respect to a

property dispute because, "[a]lthough a charter school is not part of the District of

Columbia public schools, it is a publicly funded school in the District of Columbia[,]"

and "when the District conveyed the . . . property to [the charter school], it did not lose

its public character and its public use did not cease; the property is still dedicated to a

---

[7] Regrettably, the D.C. Court of Appeals has sometimes used the terminology of "governmental" and "proprietary" functions when applying the "public rights" test under D.C. Code § 12-301, and the *WASA* court relied on several defensive-immunity cases while applying D.C. Code § 12-301, without addressing the discussion from *Owens-Corning* noted above or the distinction between offensive and defensive immunity. *See WASA*, 851 A.2d at 415–16. However, the most recent D.C. Court of Appeals case applying D.C. Code § 12-301 makes clear that the "governmental/proprietary" terminology—when used in the § 12-301 context—merely identifies the sorts of "public purposes" that the *Owens-Corning* court was referencing. *See Solid Rock Church*, 925 A.2d at 561–62 (addressing "the governmental/proprietary distinction" discussed in *WASA* and concluding that the District owned the property at issue "in its governmental capacity" because the "property was dedicated to a public use"). Regardless of terminology, the D.C. Court of Appeals has held that the substantive standards from the defensive municipal immunity context have no application to the *nullum tempus* analysis. *See Owens-Corning*, 572 A.2d at 409 (explaining that when "government itself has been the wrongdoer, entirely different considerations apply" from a situation where "the government sues to recover from wrongdoers" (citation omitted)).

public use, public education" (first alteration in original) (internal quotation marks and citation omitted)). So long as the lawsuit advances the subsidiary's public purpose—or at least replenishes funds that were used for that purpose—the statute of limitations will not run. *See Owens-Corning*, 572 A.2d at 407 ("[I]n [a prior case] we spoke of replenishing the treasury of funds earmarked for the performance of a particular public function.").

## III. ANALYSIS

In the instant action, WMATA seeks to recover costs that it expended due to an allegedly negligent pipe-burst incident that occurred more than three years before WMATA filed its complaint. At this stage of the litigation, the core of the parties' dispute is whether WMATA's claim is time-barred, and, as an initial matter, this Court notes that WMATA points to more than one basis for its contention that its lawsuit is not subject to the applicable statute of limitations. WMATA argues that it is exempt from the running of any limitations period either (1) because the District of Columbia's statutory exemption under D.C. Code § 12-301 applies (*see* Opp'n to Union Station Mot. at 9–17), or (2) because WMATA has Maryland's and Virginia's common law *nullum tempus* immunity, which WMATA asserts is absolute (i.e., not limited to lawsuits that seek to vindicate public rights) (*see id.* at 7–9).

This Court is reluctant to embark straightaway on an analysis of the scope of *nullum tempus* immunity under Maryland and Virginia common law in the context of a lawsuit that WMATA has filed under the laws of the District of Columbia. (*See* Union Station Reply at 5–6); *cf. Biscoe v. Arlington Cty.*, 738 F.2d 1352, 1356–59 (D.C. Cir. 1984) (holding, in the defensive immunity context, that Maryland and Virginia cannot

invoke sovereign immunity to avoid liability for torts that are committed in the District

of Columbia and arise under District of Columbia law. Furthermore, it is not at all

clear that the sovereign states of Maryland and Virginia would themselves have *nullum*

*tempus* immunity at common law with respect to a lawsuit that they chose to file in a

District of Columbia court. *See Guaranty Trust Co.*, 304 U.S. at 134 (holding that

foreign-government sovereigns do not get the benefit of *nullum tempus* immunity, on

the theory that "[b]y voluntarily appearing in the role of suitor, [the foreign sovereign]

abandons its immunity from suit and subjects itself to the procedure and rules of

decision governing the forum which it has sought[,]" including statutes of limitation).

Thus, this Court has opted to focus its attention on WMATA's first assertion—that,

with respect to the instant lawsuit, WMATA is entitled to invoke the exemption from

the applicable statute of limitations under D.C. Code § 12-301. Defendants strenuously

reject this contention. (*See, e.g.*, Union Station Suppl. Br. at 13 (asserting that "the

District of Columbia's *nullum tempus* sovereign immunity should not be conferred on

WMATA in the context of the instant lawsuit"); Union Station Mot. at 8–19

(maintaining that even if WMATA gets the benefit of the District's exemption from the

statute of limitations, the exemption only applies to lawsuits that seek to vindicate

public rights, and this is not such a lawsuit); *see also* Restaurant Mot. at 3–9 (arguing

that this lawsuit does not seek to vindicate public rights); *id.* at 4 n.1 (adopting the

Union Station Defendants' arguments regarding whether WMATA is entitled to the

same immunity as the District).)

For the reasons explained below, this Court agrees with WMATA.

**A.  WMATA Is Eligible To Be Exempt From The District's Statute Of Limitations Under § 12-301 Because It Is An Instrumentality Of The District That Is Imbued With A Public Purpose**

As explained above, the statutory exemption that shields the District of Columbia government from the statute of limitations for legal actions that seek to vindicate public rights applies to those subsidiary entities that the District has charged with a public purpose.  *See Solid Rock Church*, 925 A.2d at 561–62.  WMATA is "an instrumentality and agency of each of the signatory parties" to the WMATA Compact, including the District of Columbia.  D.C. Code § 9-1107.01(4).  And in the very first section of the Compact after the definitions, the signatories provided that "[t]he purpose of [the Compact] is to create a regional instrumentality . . . empowered . . . to plan, develop, finance, and cause to be operated improved transit facilities . . . as part of a balanced regional system of transportation[.]"  *Id.* § 9-1107.01(2).  Given this expression of intent by the signatory jurisdictions, there can be no serious dispute that WMATA is charged with a public purpose.  Therefore, the "District of Columbia government" exemption from the District's statute of limitations can apply to lawsuits that WMATA brings, to the extent that the particular action seeks to vindicate public rights.  *See In re Fort Totten*, 895 F. Supp. 2d at 59–60 (holding that WMATA qualifies as "the District of Columbia government" for purposes of the District's statute of repose).

Defendants initially appear to concede that "WMATA qualifies as the District of Columbia government as that term us used in [D.C. Code § 12-301]" (Union Station Mot. at 8 (citation omitted)), but they later contend that "the District of Columbia's *nullum tempus* sovereign immunity should not be conferred on WMATA in the context of the instant lawsuit" (Union Station Suppl. Br. at 13; Restaurant Mot. at 4 n.1)).  In support of this argument, Defendants invoke case law from several other jurisdictions

holding that a state's *nullum tempus* immunity does not extend to its subsidiary entities. (*See* Union Station Suppl. Br. at 7–12.)  But these cases merely apply the holding of *Metropolitan Railroad* that *nullum tempus* immunity as it existed at common law benefits only the sovereign itself, *see* 132 U.S. at 11–12, and they do not support the conclusion that the statutory exemption for "the District of Columbia government" in D.C. Code § 12-301 cannot extend to subsidiaries.  In fact, decisions from the D.C. Court of Appeals indicate that subsidiaries are included when it comes to the statutory provision, *see WASA*, 851 A.2d at 414 (analyzing "what juridicial entities the Council intended to encompass within" D.C. Code § 12-301); *Solid Rock Church*, 925 A.2d at 562 (noting that a charter school gets the benefit of the District's *nullum tempus* immunity), and Defendants ultimately appear to acknowledge this is so (*see* Union Station Suppl. Br. at 8–9 ("District of Columbia case law does not support the argument that *nullum tempus* sovereign immunity is applicable only to the District of Columbia acting in its sovereign capacity, as opposed to its agencies and political subdivisions.")).

Lest there be any confusion, this Court easily concludes based on its review of D.C. Court of Appeals' jurisprudence that WMATA is an entity that is eligible for exclusion from the statute of limitations pursuant to the "District of Columbia government" provision of D.C. Code § 12-301.

**B.  The Instant Lawsuit Seeks To Vindicate A Public Right—And Is Thus Exempt From The Statute Of Limitations—Because It Advances One Of WMATA's Charter Purposes.**

There is no question that, "[w]here the District acquires a right of action directly related to its duty to perform a service to the public, or to vindicate an overwhelmingly public interest or right," it is exempt from the running of the statute of limitations in "a

suit to recover money damages to enable the District to perform that service[.]" *Owens-Corning*, 572 A.2d at 407.[8]  As explained above, this formulation of the common law public-rights test has guided the D.C. Court of Appeals' applications of D.C. Code § 12-301, and has led that court to hold that claims are exempt from the statute of limitations if they arise "while in the performance of public functions."  *Solid Rock Church*, 925 A.2d at 559–60.  Public functions include "the education of students[,]" *id.* at 562 n.3, "tax collection[,]" *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 639 (D.C. 2015), "the relief of unemployment[,]" *Stonewall Constr. Co. v. McLaughlin*, 151 A.2d 535, 536 (D.C. 1959), "the treatment of persons suffering from communicable diseases," *Weiss*, 263 A.2d at 639, and the removal of asbestos from public buildings, *see Owens-Corning*, 572 A.2d at 399–400, 407, but not "supplying water" to the general population through a sewer system, *WASA*, 851 A.2d at 416.[9]

Applying the guidance from these cases as it must, *see Hartford Acc. & Indem. Co.*, 127 F.3d at 1118, this Court concludes that the instant lawsuit seeks to vindicate a public right for several reasons.  First and foremost, WMATA's lawsuit vindicates a public right because it seeks to replenish the funds that WMATA has expended in

---

[8] In passing, WMATA argues that D.C. Code § 12-301 "provides a *complete* 'immunity' of the District of Columbia from the bar of the statute of limitations on its claims" because the statute's text does not contain an express public-rights limitation.  (Opp'n to Union Station Mot. at 10–11 (emphasis added).)  The D.C. Court of Appeals' decision in *Solid Rock Church*, which applied the public-rights test in determining whether a statute of limitations ran against the District, squarely forecloses this argument.  *See* 925 A.2d at 559–60; *see also In re Fort Totten*, 895 F. Supp. 2d at 60–61 (rejecting an argument identical to WMATA's).

[9] The *WASA* court appears to have reached its conclusion that supplying water to the general population is not a public function by relying on cases that addressed the distinction between governmental and proprietary functions in the *defensive* sovereign immunity context.  *See* 851 A.2d at 415–16 (citing, e.g., *Scull v. District of Columbia*, 250 F.2d 767, 768 (D.C. Cir. 1957)).  *WASA* did not mention or distinguish the portion of the D.C. Court of Appeals' prior decision in *Owens-Corning* that contains a reasoned explanation regarding the limited utility of such case law in the *nullum tempus* context.  *See Owens-Corning*, 572 A.2d at 409–10.  (*See also* Part II.B, *supra*.)

furtherance of its public purpose of creating and maintaining "transit facilities" in the region. D.C. Code § 9-1107.01(2); *see also id.* § 9-1107.01(28) (authorizing WMATA to borrow money for, among other things, "expenses connected with . . . reconstruction of any facility or any part thereof"). The Compact defines "transit facilities" to include "all real and personal property . . . necessary or useful in rendering transit service . . . including without limitation, tracks, rights-of-way, bridges, tunnels, subways, . . . fixtures, buildings and structures and services incidental to or required in connection with the performance of transit service[.]" *Id.* § 9-1107.01(1(f)). And WMATA clearly advanced its charter purpose of "caus[ing] to be operated improved transit facilities," *id.* § 9-1107.01(2), when it spent money to repair the damaged TPSS in the wake of the pipe-burst incident. (*See* Compl. ¶ 14 (explaining that "[t]he TPSS is used to power a portion of the Red Line of WMATA's Metrorail system").)

Second, and critically, the purpose of WMATA's TPSS expenditure was a *public* one. There can be little doubt that "the public at large has a profound interest" in WMATA's efforts to repair its transit facilities so as to keep Metrorail safe and operational. *Owens-Corning*, 572 A.2d at 407; *see Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 84 F.3d 451, 458 (D.C. Cir. 1996) ("WMATA shares the riders' interest in safe, adequate, and inexpensive public transportation[.]"). A previous case in this District foreshadowed this very conclusion, by suggesting that WMATA would likely be exempted from the statute of limitations if it "expended resources on fixing [an] allegedly faulty automatic train control system, and then brought suit to recover the costs of those remedial efforts." *In re Fort Totten*, 895 F. Supp. 2d at 63 (emphasis omitted). Moreover, many courts—including the Supreme

Court—have applied the *nullum tempus* doctrine to enable out-of-time government lawsuits arising in the operation of a transit system. *See, e.g.*, *E. I. Du Pont*, 264 U.S. at 462 (operation of railroads); *Dep't of Transp. v. J. W. Bishop & Co.*, 439 A.2d 101, 101–02 (Pa. 1981) (operation of bridges).[10]

This Court rejects Defendants' misguided argument that repairing public transit facilities is a "proprietary" function such that, when undertaken by the District or one of its subsidiaries, the protection of *nullum tempus* immunity is not available. (*See* Union Station Mot. at 18–19 (asserting that, in filing this lawsuit, "WMATA was not engaged in a quintessentially governmental activity[,]" but rather "was attending to its proprietary business affairs"); *accord* Restaurant Mot. at 5–9.) As explained above, the D.C. Court of Appeals has expressly chosen not to graft the standards that are applicable in the defensive immunity context onto the section 12-301 exemption analysis. *See Owens-Corning*, 572 A.2d at 409. Thus, Defendants' reliance on an "analogy" with "case law construing the scope of WMATA's tort immunity" *as a defendant* is unavailing. (Union Station Mot. at 19; *see also* Restaurant Mot. at 8.) Defendants are correct that—in the context of defensive sovereign immunity—where immunity "for [WMATA's] torts . . . committed in the conduct of any proprietary function" is waived, D.C. Code § 9-1107.01(80), the D.C. Circuit has construed that

---

[10] It is not clear whether the number of people affected by a particular lawsuit is relevant to the question of whether the lawsuit seeks to vindicate a public right, but the D.C. Court of Appeals has left open this possibility. *See Owens-Corning*, 572 A.2d at 408, 410 (referencing "the cross-section of the population affected" as a relevant factor, but noting that the court would "not necessarily adopt [a] test" under which the only lawsuits that vindicate public rights are ones in which "all citizens of the District are affected"). Regardless, the complaint at issue here involves damage to the Metro's Red Line; therefore, it is indisputable that a very large number of people are affected. *See* Dan Malouff, *All 91 Metro stations, ranked by ridership*, Greater Greater Wash. (Mar. 30, 2016) https://ggwash.org/view/41234/all-91-metro-stations-ranked-by-ridership (last visited Aug. 2, 2017) (citing WMATA data showing that Union Station is the busiest Metro stop and that the next three busiest stops are all also on the Red Line).

waiver to include torts committed in the course of some of WMATA's core operations. *See, e.g.*, *Beatty v. WMATA*, 860 F.2d 1117, 1127 (D.C. Cir. 1988) (track construction); *Dant v. District of Columbia*, 829 F.2d 69, 74–75 (D.C. Cir. 1987) (operation and maintenance of the farecard system). But this line of cases is rooted in entirely different sources of law from the *nullum tempus* doctrine; in fact, the parameters of WMATA's defensive immunity are a matter of *federal* law, not District of Columbia (or Maryland or Virginia) law. *See Morris*, 781 F.2d at 220 & n.2.[11]

What is more, the two doctrines reflect fundamentally different policy concerns. *See Owens-Corning*, 572 A.2d at 409 ("[S]overeign immunity from tort liability was designed to protect the discretionary acts of governmental officers from the chilling effects of potential liability, while preserving the public's access to justice in merely ministerial cases. No similar policy operates where the government itself brings suit to vindicate public rights." (footnote omitted)). Put another way, *nullum tempus* immunity—at least as it exists by statute under D.C. Code § 12-301—is not concerned with shielding discretionary policy decisions from tort liability, but rather with identifying those lawsuits for which "the public at large is interested in the outcome." *Owens-Corning*, 572 A.2d at 410. And in this Court's view, there can be little question that the public at large has an interest, both financial and practical, in WMATA's repairing its wrongfully damaged transit infrastructure and seeking to recoup the cost of those repairs from the alleged tortfeasors, if need be.

---

[11] The federal nature of WMATA's defensive immunity is rooted in the fact that the WMATA Compact—an interstate compact to which Congress has assented—expressly delineates the scope of that immunity. *See Morris*, 781 F.2d at 220 & n.2

## IV.    CONCLUSION

Because the District has specifically tasked WMATA with pursuing a public purpose, and because the instant lawsuit seeks to recoup funds that WMATA spent to advance that purpose, the lawsuit can proceed pursuant to the "District of Columbia government" exception in D.C. Code § 12-301, notwithstanding the otherwise applicable statute of limitations.[12]   Under this Court's reading of the law as set forth by the D.C. Court of Appeals, the instant holding is a limited one: extending the benefit of *nullum tempus* to WMATA in this case does not necessarily implicate WMATA's tort claims to redress injuries *beyond* physical damage to its transit facilities, nor does it necessarily apply to WMATA's transit-related breach-of-contract claims.[13]   But here, where WMATA has spent money to repair allegedly wrongfully damaged facilities that are critical to a portion of a transit system whose operation is of great interest to a wide segment of the public, WMATA is not subject to the statute of limitations in a tort suit that seeks to recover the cost of those repairs.   Consequently, as set forth in the

---

[12] Because the Court holds that this lawsuit is entirely exempt from the statute of limitations, it need not resolve whether the applicable limitations period is three years or five years under D.C. law. (*Compare* Opp'n to Union Station Mot. at 17 (advocating a five-year limitation period), *with* Union Station Reply at 8–9 (advocating a three-year limitation period).)   The Court does note, however, that WMATA's five-year argument depends on this being a lawsuit to redress "an injury to real property from toxic substances including products containing asbestos[,]" D.C. Code § 12-301(10), yet the complaint alleges that WMATA's damages were caused by "leaked water and other debris" (Compl. ¶ 13).  *Cf. Cormier v. D.C. Water & Sewer Auth.*, 959 A.2d 658, 668–70 & n.2 (D.C. 2008) (applying a three-year limitation period in a case about water damage).

[13] There is substantial authority for the proposition that *nullum tempus* immunity is more circumscribed for contract claims than for tort claims.  *See, e.g.*, *City of Rochester v. Marcel A. Payeur, Inc.*, 152 A.2d 878, 882–83 (N.H. 2016); *Baltimore Cty. v. RTKL Assocs., Inc.*, 846 A.2d 433, 444 (Md. 2004).

accompanying Order, the motions to dismiss that the Union Station Defendants and the Restaurant Defendants have filed will be **DENIED**.

DATE:  August 3, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge